UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
OPAL YOUNG,

                            Plaintiff,

        -against-

CAMBA, INC.,

                            Defendant.
----------------------------------------------------------------X

**COMPLAINT**

**Docket No: 18-cv-3962**

**JURY TRIAL DEMANDED**

OPAL YOUNG ("Plaintiff"), by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against CAMBA, INC. ("CAMBA" or "Defendant"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1. This is a civil action based upon egregious violations that Defendant committed of Plaintiff's rights guaranteed to her by: (i) the anti-disability discrimination provisions of the Americans with Disabilities Act of 1990, as amended ("ADA"); (ii) the anti-disability discrimination provisions of Title 8 of the Administrative Code of the City of New York, also known as the New York City Human Rights Law ("NYCHRL"); and (iii) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff, who suffers from Retinitis Pigmentosa, an eye condition that causes gradual loss of vision, is a former employee of CAMBA, a Brooklyn-based not-for-profit corporation that provides social services to individuals and families in need throughout New York City.

1

3. Plaintiff brings this action to seek redress for Defendant's egregious disability discrimination taken against her during her employment. Indeed, as detailed below, while working for CAMBA as a Case Manager, Plaintiff's condition, which caused Plaintiff to progressively lose her vision, deteriorated such that Plaintiff repeatedly requested that the Defendant provide her with reasonable accommodations to assist her in performing the essential functions of her position. Yet, in violation of the ADA and the NYCHRL, Defendant continuously failed to do so. Much worse, after a third-party recommended to Defendant that it provide Plaintiff with certain accommodations so that Plaintiff could perform the essential functions of her position, Defendant instead terminated Plaintiff's employment on August 19, 2013, rather than doing so.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. On June 2, 2014, Plaintiff filed a Verified Complaint with the New York City Commission on Human Rights ("CHR") for the Defendant's violations of the NYCHRL and the ADA as detailed herein. Plaintiff's Verified Complaint was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned EEOC Charge No. 16F-2014-00189.

5. On July 7, 2017, the CHR issued a "Notice of Probable Cause Determination and of Intention to Proceed to Public Hearing," specifically finding that there is probable cause that Defendant violated Plaintiff's rights under the NYCHRL by refusing to reasonably accommodate Plaintiff's disability and terminating her employment because of her disability.

6. Thereafter, on February 14, 2018, at Plaintiff's request, the CHR issued a "Notice of Administrative Closure" and dismissed the case for administrative convenience, thereby allowing Plaintiff to pursue her claims in this forum. Accordingly, on April 13, 2018, the EEOC

issued to Plaintiff a "Notice of Right to Sue" ("Notice"). Plaintiff received the Notice on or about April 18, 2018.

7. Plaintiff has timely filed this Complaint within ninety days of receiving that Notice from the EEOC.

## JURISDICTION AND VENUE

8. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 12101 *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all non-federal claims.

9. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

## PARTIES

10. At all relevant times herein, Plaintiff was and is a resident of the State of New York and was a "person" and an "employee" entitled to protection as defined by the ADA and the NYCHRL.

11. At all relevant times herein, Defendant was and is a domestic not-for-profit corporation with its principal place of business located at 1720 Church Avenue, Brooklyn, New York 11226.

12. At all relevant times herein, Defendant CAMBA "employed" fifteen and thus four or more "employees," and was thus an "employer" within the meaning of the ADA and the NYCHRL.

**BACKGROUND FACTS**

13. At all relevant times herein, CAMBA was and is a not-for-profit corporation that provides social services to individuals and families in need throughout New York City. According to CAMBA's website, CAMBA offers various integrated programs in the areas of: Economic Development; Education and Youth Development; Family Support; Health; Housing; and Legal Services.

14. Plaintiff suffers - - and at all time relevant herein, has suffered - - from Retinitis Pigmentosa, an eye condition that causes gradual loss of vision.

15. Plaintiff commenced her employment with CAMBA on or about September 23, 2002, as a Youth Advocate for its Partnership for Youth Program. However, on or about August 31, 2003, following exhaustion of the program's funding, CAMBA terminated Plaintiff's employment.

16. On or about November 3, 2003, CAMBA rehired Plaintiff to work as a Case Planner for its Families for Kids Program, and Plaintiff remained in that position until approximately January 2005. In this role, Plaintiff's job duties consisted of, *inter alia*, assisting families in avoiding having children enter the foster care system and conducting field visits.

17. In or around January 2005, Plaintiff underwent a surgical procedure on her eyes to correct several impairments associated with her condition, including, *inter alia,* a macular hole and cataracts. However, the surgery was unsuccessful and instead resulted in additional complications to Plaintiff's vision.

18. In or around early 2007, Plaintiff notified CAMBA of her condition. Specifically, Plaintiff met with Ellen Ross, a Human Resources representative, and Claire Harding, Vice President, regarding her condition and prognosis.

19. At the time of this initial meeting in early 2007, Plaintiff's disability posed no significant restriction on her ability to perform the essential functions of her position, but Plaintiff proactively requested a transfer from Ross and Harding because, anticipating her condition would only worsen given its progressive nature, Plaintiff did not want to miss anything in her field visits that could be potentially harmful to a child. Thereafter, Plaintiff was transferred to a Senior Client Advocate position with CAMBA's Eviction Prevention Program.

20. In or around August 2007, seeking a position with greater responsibilities than her position at the Eviction Prevention Program, Plaintiff requested another transfer from Ross and Harding.

21. Plaintiff was then transferred to a Case Manager position at the Atlantic House Men's Shelter ("Atlantic House"), located at 2403 Atlantic Avenue, Brooklyn, New York 11210.

22. As a Case Manager at Atlantic House, Plaintiff's primary job duties were to, *inter alia*, aid individuals requiring social service assistance, conduct the initial intake and assessment of the clients' needs and periodic reassessment, formulate the clients' initial independent living plans and goals, recommend and implement strategies to persuade clients (when necessary) to participate fully in the process in order to transition into permanent housing, and monitor the clients' progress in obtaining same.

23. Thereafter, in 2009, recognizing that she was having an increasingly more difficult time using her computer because of her declining vision, Plaintiff took the initiative on her own to request services and vocational support from the New York State Commission for the Blind ("NYSCB"), who referred Plaintiff to Helen Keller Services for the Blind ("Helen Keller"), a partner agency of the NYSCB. At this time, Jerry Randell from Helen Keller recommended and

provided Plaintiff with assistive technology to aid her in the performance of her job duties, for which NYSCB paid.

24. Specifically, following a meeting with Ross, Randell installed technology, such as close-circuit television ("CCTV") and MAGic software on Plaintiff's work computer, which magnified Plaintiff's computer screen. Plaintiff was instructed to utilize this software only as needed, and Plaintiff did utilize this software only when necessary to successfully perform her job duties.

25. But while Plaintiff was provided with this technology, she was not properly trained on how to use any of it, and was instead merely provided with a "cheat sheet" containing the basic commands.

26. In or around 2010, Abdoulaye Tandia ("Tandia") became Plaintiff's direct supervisor, as well as the supervisor in charge of all of Defendant's Atlantic House employees.

27. In approximately late-2012, because Plaintiff's vision had continued to decline such that she was not able to complete her job duties as quickly as she had in the past, Plaintiff requested that Defendant reduce her caseload to allow additional time for Plaintiff to perform her work. Defendant reluctantly granted this request.

28. However, by late-January 2013, Defendant revoked this accommodation without explanation and began unilaterally increasing Plaintiff's caseload without providing Plaintiff with any further accommodations or assistance. Because of Defendant's revocation of this accommodation, Plaintiff faced increasing difficulty in completing her job duties as she could not complete her tasks as fast as she once could due to the decline of her vision.

29. From in or around February until in or around March 2013, Plaintiff repeatedly complained to Tandia that she was having significant problems completing her job duties because

of her declining vision. However, Tandia refused to address Plaintiff's complaints or discuss any possible accommodation to assist her.

30. In or around April 2013, following months of complaints, CAMBA held a meeting - - at Plaintiff's insistence - - attended by Ross, Tanida, Tyrell Johnson, Clinical Director, and Plaintiff. During this meeting, Plaintiff expressly stated that she was behind on her caseload because she was losing her vision. During this meeting, Ross suggested that Plaintiff again request assistance on her own from the NYSCB, which Plaintiff did.

31. That same month, still in or around April 2013, Sydelle Postman of Helen Keller performed an assessment of Plaintiff's on-the-job needs. As Plaintiff had not received adequate training on the technology that Helen Keller had previously provided, Postman recommended that Plaintiff undergo this training to provide her with the necessary computer skills. However, the NYSCB was not able to schedule Plaintiff's training until in or around October 2013.

32. Despite Defendant's knowledge that Plaintiff was continuing to experience substantial difficulties completing her paperwork because of her vision loss and that she had requested services from the NYSCB, Defendant did not seek to accommodate Plaintiff's disability in any other way. Worse, notwithstanding this knowledge, Defendant instead continued to increase Plaintiff's caseload, which only resulted in Plaintiff falling further behind in her work.

33. Accordingly, on July 29, 2013, Defendant issued Plaintiff her first substantive written warning, which contained a corrective action plan that required Plaintiff to correct certain performance issues, such as completing Independent Living Plans ("ILPs"), housing packets, and progress notes, all by September 1, 2013. Most, if not all, of the performance issues raised in this written warning occurred as a direct result of Defendant's unilateral increase of Plaintiff's caseload despite knowing that Plaintiff could not complete her work as quickly as she had in the past due

7

to her decline in vision and their refusal to offer or discuss any other form of accommodation until Plaintiff could complete her training in October 2013.

34. Moreover, the primary complaint included in the written warning concerned a new procedure that Defendant implemented in early-2013 regarding ILPs. While all other case managers at Atlantic House had been trained on this procedure in the beginning of 2013, Plaintiff was specifically excluded from this training because she would not have been able to adequately see the monitor during the session and Defendant failed to offer her any other accommodation that would have enabled Plaintiff to train alongside her peers at that time. Plaintiff did not receive this training until in or around April 2013, and well after her colleagues had been trained on the procedure, yet Defendant included Plaintiff's deficiencies in completing ILPs in the written warning.

35. About two weeks later, on August 15, 2013, Postman, Plaintiff, and several CAMBA employees, including Ross and Tandia, attended a meeting to discuss Plaintiff's job performance and the issues raised in the July 29, 2013 written warning. During this meeting, Postman conveyed to Defendant that Plaintiff needed to receive additional training to address the performance issues raised in the written warning. Defendant however, failed to acknowledge Plaintiff's request for additional training during this meeting or at any time thereafter.

36. Instead, on August 19, 2013 - - merely *four* days later - - Defendant terminated Plaintiff's employment rather than provide her with the required accommodations to enable her to perform the essential functions of her role. Remarkably, Plaintiff's termination occurred weeks before the September 1, 2013 deadline for improvement included in Plaintiff's July 29, 2013 written warning, and well before Plaintiff could have the opportunity to attend the needed computer training scheduled for October 2013.

## FIRST CLAIM FOR RELIEF
*Disability Discrimination in Violation of the ADA*

37. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

38. The ADA prohibits discrimination against any qualified individual on the basis of disability, including terminating an employee because of a disability, the perception that she is disabled, or a record of impairment.

39. Additionally, the ADA requires a covered entity to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.

40. As described above, CAMBA discriminated against Plaintiff in violation of the ADA by terminating Plaintiff's employment because of or motivated by her disability.

41. As further described above, CAMBA discriminated against in violation of the ADA by failing to accommodate her disability.

42. As a direct and proximate result of CAMBA's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

43. As a direct and proximate result of CAMBA's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

44. CAMBA's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff in entitled to an award of punitive damages.

9

**SECOND CLAIM FOR RELIEF**
*Disability Discrimination in Violation of the NYCHRL*

45. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

46. The NYCHRL forbids an employer, employee, or an agent thereof from discriminating against an employee on account of that employee's disability.

47. The NYCHRL further requires that an employer shall make reasonable accommodations to a person with disabilities provided that the disability is known or should have been known by the employer, employee, or an agent thereof.

48. As described above, CAMBA discriminated against Plaintiff in violation of the NYCHRL by terminating Plaintiff's employment because of or motivated by her disability.

49. As further described above, CAMBA discriminated against Plaintiff in violation of the NYCHRL by failing to accommodate her disability.

50. As a direct and proximate result of CAMBA's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm, for which she is entitled to an award of monetary damages and other relief.

51. As a direct and proximate result of CAMBA's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

52. CAMBA's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

**DEMAND FOR A JURY TRIAL**

53. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York City laws;

B. Grant preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

C. Restraining Defendant from any retaliation against Plaintiff for participating in this lawsuit in any form;

D. Grant an award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with her claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that she would have received but for the Defendant's unlawful conduct;

E. Grant an award of damages to be determined at trial to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment in connection with her claims;

F. Grant an award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with her claims;

G. Grant an award of punitive damages, as provided by law;

H. Award Plaintiff her reasonable attorneys' fees, costs, and disbursements in this action, including but not limited to any expert witness fees;

I. Award pre-judgment and post-judgment interest, as provided by law; and

J. Grant such other and further relief as this Court deems just and proper.

Dated: Great Neck, New York
July 10, 2018

Respectfully submitted,
BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
Tel. (516) 248 - 5550
Fax. (516) 248 - 6027

By: _____
CAITLIN DUFFY (CD 8160)
ALEXANDER T. COLEMAN (AC 8151)
MICHAEL J. BORRELLI (MB 8533)